UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| DAVID ROBINSON, ALLEN STONE, NANCY MALSOM, CLAIRE KILCOYNE, and MICHAEL BOURNE, Individually and On Behalf Of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>MATCH.COM, LLC,<br><br>Defendant. | Case No._____<br><br><br><br><br><br><u>**JURY TRIAL DEMAND**</u> |

**CLASS ACTION COMPLAINT**

Plaintiffs, David Robinson, Allen Stone, Nancy Malsom, Claire Kilcoyne, and Michael Bourne ("Plaintiffs") by their undersigned attorneys, bring this class action complaint against Match.com, L.L.C ("Match" or the "Company"). Plaintiffs' allegations are based upon knowledge as to their own acts and upon information and belief as to all other matters. Plaintiffs' information and belief is based upon, among other things, a comprehensive investigation undertaken by their attorneys, which included, without limitation: (a) interviews of witnesses, including former employees of Match and the Company's subcontractors; (b) review of Match's published materials and information available on the internet; (c) analysis of public records and documents, including the Company's filings with the Securities and Exchange Commission; and (d) an exhaustive analysis of thousands of inactive, fake and fraudulent

profiles posted on Match's website. Plaintiffs believe that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1. This is a class action against Match for breach of contract, breach of the implied covenant of good faith and fair dealing, and negligent misrepresentation. Plaintiffs and members of the class (the "Class") are all current or past paying members or subscribers to Match's online dating service.

2. As alleged herein, Match breached its contract and common law covenants with Plaintiffs and other members of the Class by representing itself in its Terms of Use Agreement (the "Agreement") as "the service for single adults to meet each other online" when in fact Match's service is little more than a scheme to induce members of the public to join (and pay for) Match's website based on false pretenses. A copy of the Agreement is annexed hereto as Exhibit A.[1]

3. In fact, while Match purports to have "millions" of active subscribers, *well over half* of the profiles on its site belong to inactive members who have cancelled their membership or allowed their subscriptions to lapse and/or are fake and fraudulent profiles posted by scammers and others. To the extent these types of profiles do not belong to the scammers that proliferate the site, the rest are unreachable by legitimate users attempting to avail themselves of the services offered by Match and paid for via subscription fees.

4. With regard to inactive members (*i.e.*, members who have cancelled their subscriptions and/or allowed their subscriptions to lapse), Match takes virtually no action to remove these profiles (that remain on the system, are searchable by members, appear as and are

---

[1] Further references to specific provisions of the Agreement will be cited as "Agreement ¶__."

in fact counted among Match's "active" members), for months and sometimes years after the individuals have become inactive. And, Match will only remove profiles after a former subscriber calls to complain and specifically requests its removal.

5.  With regard to the thousands of fake and fraudulent profiles (*i.e.*, profiles likely placed by third-parties for illegitimate and unlawful purposes), Match likewise makes little to no effort to vet, police, or remove these profiles and thereby permits, condones, and acquiesces in their posting. The effect of these deceptive practices was to mislead Plaintiffs and other members of the Class into believing that millions of individuals were active members and further exposed Plaintiffs and members of the Class to frauds and other schemes.

6.  Plaintiffs, on their own behalf and as representatives of the Class, seek to recover compensatory damages in the amount of fees paid for subscriptions to the Match site.

7.  Plaintiffs also seek injunctive relief ordering cessation of the wrongful and deceptive practices, implementation of administrative changes designed to remedy current and future problems, improved disclosure to Match members and prospective members regarding the number of active subscribers, and revision of the language of the Agreement so as to make its terms clear to class members.

## JURISDICTION AND VENUE

8.  This Court has diversity subject-matter jurisdiction over this class action pursuant to the Class Action Fairness Act of 2005, Pub. L. No. 109-2, 119 Stat. 4 ("CAFA"), which, *inter alia*, amends 28 U.S.C. §1332, at new subsection (d), conferring federal jurisdiction over class actions where, as here: (a) there are 100 or more members in the proposed Class; (b) at least some members of the proposed Class have a different citizenship from Match; and (c) the claims of the proposed Class members exceed the sum or value of five million dollars ($5,000,000) in the aggregate. *See* 28 U.S.C. §1332(d)(2) and (6).

9. This Court has personal jurisdiction over the parties because Plaintiffs submit to the jurisdiction of the Court, Match is headquartered in the State of Texas, transacts business within the State of Texas, and by virtue of the fact that Match's executive offices are located in the State, and Match systematically and continually conducts business throughout the State.

10. Venue is proper because Match is headquartered in this District, conducts substantial business in this District, maintains offices in this District, and because certain of the acts or omissions affecting Class members occurred in this District. Further, the Agreement at issue provides that disputes regarding the Agreement shall be governed by the laws of the State of Texas and filed in state or federal court in the state of Texas, Dallas County.

## **PARTIES**

1. Plaintiff David Robinson is a resident of Florida, and, at times relevant hereto, a paid subscriber to Match.com's online dating service.

2. Plaintiff Allen Stone is a resident of New York, and, at times relevant hereto, a paid subscriber to Match.com's online dating service.

3. Plaintiff Nancy Malsom is a resident of Iowa, and, at times relevant hereto, a paid subscriber to Match.com's online dating service.

4. Plaintiff Claire Kilcoyne is a resident of Washington, and, at times relevant hereto, a paid subscriber to Match.com's online dating service.

5. Plaintiff Michael Bourne is a resident of Tennessee, and, at times relevant hereto, a paid subscriber to Match.com's online dating service.

6. Match is a Delaware limited liability corporation that maintains its headquarters and principal place of business in Dallas, Texas. Match is a wholly owned subsidiary of IAC/Interactive Corp. and operates a website for single adults to meet each other online.

Members pay a monthly fee to access all features of the website. The website is interactive and members use its services to contact each other online.

## CLASS ACTION ALLEGATIONS

7. Plaintiffs bring this class action on their own behalf and on behalf of all similarly situated individuals who are current and former members of the Match service and suffered damages as a result of subscription fees paid to Match for the use of its website.

8. This action is properly maintainable as a class action.

9. The Class is so numerous that joinder of all members is impracticable.

10. The number and identities of class members can easily be determined from the records maintained by Match and/or its agents. The disposition of their claims in a class action will be of benefit to the parties and to the Court.

11. A class action is superior to other methods for the fair and efficient adjudication of the claims herein asserted, and no unusual difficulties are likely to be encountered in the management of this action as a class action. The likelihood of individual Class members prosecuting separate claims is remote.

12. There is a well-defined community of interest in the questions of law and fact involved affecting members of the Class. Among the questions of law and fact which are common to the Class, and which predominate over questions affecting any individual Class member are, *inter alia*, the following:

   (a) Whether Match breached its contract and common law covenants with Plaintiffs and others similarly situated by representing itself in the contract as a service for single adults to meet each other online when in fact Match's service is a scheme to induce members of the public to subscribe to Match's website based on false pretenses;

   (b) Whether Match negligently or fraudulently misrepresented to class members that it had millions of active subscribers when, in fact, over half of the profiles of alleged subscribers are inactive, fake or fraudulent members who could not be reached via the site because their subscriptions have expired and/or are illegitimate;

   (c) Whether Match breached its contract and common law covenants with Plaintiffs and others similarly situated by permitting, condoning or acquiescing in the posting of fake or fraudulent profiles by international internet scammers or others; thereby misleading Plaintiffs and other members of the Class into believing that millions of persons were active members or worse, exposing Plaintiffs and members of the Class to frauds and other schemes;

18. Plaintiffs are members of the Class and are committed to prosecuting this action. Plaintiffs have retained competent counsel experienced in litigation of this nature. Plaintiffs' claims are typical of the claims of the other members of the Class in that they are seeking compensatory damages for Match's breach of contract and breach of common law covenants by Match's fraudulent or negligent misrepresentations about the number of active members; permitting, condoning or acquiescing in the posting of fake or fraudulent profiles on its website by internet scammers or others; the same claims being asserted on behalf of each individual Class member. Plaintiffs do not have interests antagonistic to or in conflict with those they seek to represent. Plaintiffs are, therefore, adequate representatives of the Class.

19. The likelihood of individual Class members prosecuting separate individual actions is remote due to the relatively small loss suffered by each Class member as compared to the burden and expense of prosecuting litigation of this nature and magnitude. Absent a class

action, Match is likely to avoid liability for its wrongdoing, and the Class members are unlikely to obtain redress for the wrongs alleged herein.

20. Adjudication of this case on a class-wide basis is manageable by this Court. The contracts that were entered into by Plaintiffs and each Class member throughout the United States and its possessions are the same or so similar as to be legally and factually indistinguishable in all material respects, and under the terms of said agreements Texas law was to be applied to disputes arising thereunder. As a result, it will not be difficult for the Court or the jury to determine whether Match has breached its contracts for each of the members of the Class. This Court is an appropriate forum for this dispute.

## FACTUAL ALLEGATIONS

### The Terms of Use Agreement

21. Match is an online dating service that represents in its Agreement that it is "the service for single adults to meet each other online." Agreement ¶*Intro*.

22. Plaintiffs and members of the Class entered into the Agreement by subscribing to Match's internet website, where the Agreement was posted.

23. By entering into the Agreement, Plaintiffs and members of the Class became active members of Match's service and paid monthly subscription fees.

24. Under the terms of the Agreement, a person can become a member at no cost with access to limited services. In order to access additional features and services, including, but not limited to, the ability to communicate with other members, an individual must become a paying subscriber to the service. Agreement ¶3

25. Under the terms of the Agreement, members agree not to post or transmit to other members or to Match any inaccurate material, misleading, or false information. Agreement ¶9(a).

Match further represents in the Agreement that Match may review and delete any content, photos or profiles that in the sole judgment of Match violate the provision of the Agreement. Agreement ¶9(b).

26. Match reserves the right to investigate and take appropriate legal action in its sole discretion against anyone who violates the provisions of the Agreement, including, but not limited to, removing the offending communication from the service and terminating the membership of violators who post or provide information that is false or misleading. Agreement ¶9(d).

27. The Agreement also provides that information posted in the profiles of members must be accurate, current and complete. Agreement ¶9(h).

28. The Agreement also provides that Match will not allow its subscribers to: (a) "impersonate any person or entity"; (b) "'stalk' or otherwise harass any person"; and (c) "forge headers or otherwise manipulate identifiers in order to disguise the origin of any information transmitted through the Service." Agreement ¶10.

29. Match also represents that in order to protect the integrity of the service, Match reserves the right at any time in its sole discretion to block members from certain IP addresses from accessing the website. Agreement ¶14.

30. The foregoing provisions of the Agreement induced or were intended to induce Plaintiffs and Class members into the false belief that the information posted on Match's service was accurate and legitimate, that Match would not tolerate and would actively police and remove any false or misleading information, and that violators of these policies would be removed by Match and have their membership rights terminated.

31. Match breaches the terms of the Agreement by, *inter alia*:

  (a) failing to vet new profiles;

  (b) failing to remove inactive profiles;

  (c) failing to accurately disclose its active and reachable membership base;

  (d) falsely labeling inactive profiles as "active";

  (e) failing to police its site from the proliferation of false and fraudulent profiles;

  (f) failing to take reasonable steps to remove and block scammers, even after certain profiles have been reported;

  (g) failing to properly warn subscribers of the proliferation of scammers on the site and failing to provide information on how to recognize and report scamming activity;

  (h) failing to monitor and block IP addresses from certain countries from where scamming activity flourishes (*i.e.*, Nigeria, Ghana, Russia, Eastern Europe, Malaysia, and other locations); and

  (i) representing itself as a legitimate service for single adults and accepting subscription fees from members and then failing to provide the service offered.

**Former Employees and Witnesses Verify Breaches by Match**

  32. Plaintiffs' investigation revealed that Match does not only fail to remove the profiles of cancelled subscribers and those whose paid subscription has expired but, in fact, intentionally avoids doing so unless and until such persons expressly request that their profiles be removed from the site.

  33. Match fails to remove the profiles of these inactive and former subscribers in order to represent to the public that Match has "millions" of active members. By artificially

inflating its active membership numbers, Match induced Plaintiffs and members of the Class to either become or remain paying members in order to be able to communicate with other members, the overwhelming majority of which are in fact nonexistent and cannot be reached.

34. In the course of Plaintiffs' investigation, it was revealed by numerous former employees of Match and/or their subcontractors that *as many as 60%* (and by some accounts *more*) of the profiles on the website belong to inactive and/or fake/fraudulent users whose profiles could be viewed by paying members, appear to be active, but who could not be contacted.

35. Former employees revealed further that Match routinely and intentionally represents that there are significantly more active members on the website than there actually are.

36. Witnesses, including former employees, reported that some of the tactics Match uses to falsely represent its site include, *inter alia*:

(a) intentionally leaving profiles of inactive members viewable and searchable on its websites far beyond their date of inactivity or cancellation;

(b) taking virtually no steps to remove inactive users from view until a complaint is received by the former user of that account;

(c) falsely labeling profiles as "active within [#] days" when the accounts belong to cancelled and/or inactive accounts that could not be contacted;

(d) improperly sending emails of suggested "matches" to its members and inactive members, even though these "matches" belong to inactive accounts who cannot be contacted;

(e) sending former and inactive members "winks" informing them that a potential match is trying to contact them in order to get them to renew their subscriptions (only to find out after they do so that the supposed seeker does not exist);

(f) failing to effectively vet new profiles to determine whether they are fake or fraudulent despite easily discernable "red flags" (including repeated use of imagery and language, and use of notorious IP address origins);

(g) failing to effectively police its site to monitor and remove fake and fraudulent member profiles that remain viewable by unwitting members; and

(h) failing to warn and protect its members from the pervasive scammers that populate its site.

37. A former Match employee stated that in 2006-07, members previously were able to hide their profiles by setting their accounts manually to "inactive" or "hidden." However, in 2008, that policy was changed so that only Match corporate employees could block a member's profile from view.

38. Another former Match employee revealed that the database was littered with names and faces of numerous individuals who were unreachable. She advised that a huge percentage of the profiles were not real members but "filler profiles."

39. Match does not have adequate safeguards to protect its subscribers from scammers who regularly access the site and post false profiles in order to mislead and commit frauds and other crimes against subscribers. Further, Match does not adequately police its website to ensure that subscribers are in fact legitimate members who are "interested in meeting each other" as the Agreement provides.

40.     When new members submit a profile, they are instructed, "We have your profile and it's now being read, like all submissions, by our Customer Care team. Once it's approved – usually within 24 hours – we'll send you an email to let you know it's live on the site."

41.     Despite Match's representation (*i.e.*, that Match is engaging in an eyes-on approval process), this is, in fact, false.  Indeed, Plaintiffs' investigation revealed that new profiles are "approved" and posted almost instantaneously, illustrating that the approval process is mere window dressing to further deceive users into a sense of security.

42.     In the course of the investigation, former employees of Match, or their subcontractors, as well as other witnesses with knowledge revealed that upwards of 60% of the profiles (and by some reports more) were either inactive former users or fake or fraudulently posted by international internet scammers seeking to engage in identity theft or lure members in fraudulent schemes.

43.     Witnesses also advised that little, if any, proactive steps were taken by Match to ensure that profiles posted by scammers were policed and removed.  In fact, only when a subscriber complained about a certain profile was any investigation undertaken to determine if the profile was fraudulent.

44.     Despite Match's representation that it may review and delete any content, photos or profiles that in violate its terms (Agreement ¶9(b)), thousands of profiles remain on Match that are fake or fraudulent.  In numerous instances, the same photograph or groups of photographs and the same text and descriptions are used for hundreds of different profiles with the profiles indicating that the same person (albeit different user names) resides in different parts of the United States.

45. In numerous instances the profile photos attached to these fake and fraudulent profiles are of pornographic actresses and models, seemingly stolen from independent websites.

46. In addition, profiles are listed as belonging to members in the United States when they are in fact posted using IP addresses originating in Nigeria, Russia, Eastern Europe, Malaysia, Ghana, and other regions notorious for being hotbeds of internet scamming activity.

47. Plaintiffs' investigation has revealed that numerous computer technologies exist that would allow Match to effectively and efficiently police its website for the benefit and safety of its customers, including, but not limited to,photograph and key word recognition software (to identify use of the same photographs and/or same text in multiple profiles) and IP address and email recognition software (to identify users abroad from certain geographic regions who fraudulently post profiles domestically for illegal purposes). However, despite its existence and availability, Match fails to utilize such technology or take any reasonable steps to ensure the integrity of its site.

48. The reason Match does not take any serious measures to rid its site of inactive, fake or fraudulent profiles, and in fact takes steps to ensure such profiles remain on the site, is because Match expressly and publicly relies on the artificially inflated number of profiles to demonstrate that it is a growth company, to induce prospective members to pay for and join the site, and to deceive its current members in order to maintain them as paying subscribers.

49. Match also relies on the fact that the appearance of gender parity is achieved, albeit artificially, by virtue of the fact that most fake and fraudulent profiles are females and the makeup of actual active users is heavily skewed towards single males.

50. Match also engages in fraudulent or misleading business practices to induce members of the Class to renew their subscriptions. At or about the time that a paid member's

subscription is about to expire, Match and/or its agents sends to such members an electronic communication, or "wink," that advises the member that persons who are active Match members are trying to contact them. In order to respond to the purported request, the member must renew his/her membership. Once such membership is renewed, either the profile of the purportedly interested person disappears or is inactive. Thus, Match fraudulently induces paid subscriptions by posting false or misleading information that is prohibited by the Agreement.

51. Match also continues to send emails notifications to former members alerting them of potential "matches," in some cases more than a year after the person has deactivated their account, that similarly evaporate once the individual reactivates their account.

**Plaintiffs and Members of the Class Suffer**

52. As a result of the foregoing actions and/or inactions of Match, Plaintiffs and other members of the Class were misled into joining Match as paying subscribers and/or misled into renewing their membership based on communications from Match that active members were trying to contact them when such representations were false.

53. As a result of the representations in the Agreement, Plaintiffs and members of the Class joined Match reasonably believing that the Match would take steps to insure the integrity and legitimacy of its site, including policing and removing information that was false or misleading, and blocking members who engaged in illegitimate and illegal activity when the same was discovered.

54. On the basis of Match's advertisements and website statements as to the vast number of active members, which representations were false and known to be such by Match, Plaintiffs and others similarly situated acted in reliance on such representations and joined Match's online dating service as paying subscribers.

55. As a result of the foregoing, Plaintiffs and others similarly situated suffered damages, including, but not limited, to the cost of their subscriptions and/or renewal of same.

## COUNT I

### *Breach of Contract*

56. Plaintiffs incorporate by reference and re-allege each and every allegation set forth above as though fully set forth herein.

57. Match posts on its website the Agreement to provide services to prospective subscribers. On its website and in the Agreement, Match falsely represents that it is a "service for single adults to meet each other online" (Agreement ¶*Intro.*) when, in fact, the service is little more than a scheme to defraud Plaintiffs and others members of the Class out of the subscription fees it collects.

58. The scheme is effectuated by Match falsely advertising that "millions" of individuals are members of the service, when, in fact, less than 40 percent of the profiles on the site belong to active users who can be reached via the site. The rest belong to inactive users, or are fake or fraudulently placed for illegitimate purposes.

59. While Match represents in the Agreement that it will preserve the integrity of the site, Match, in effect, aids and abets the internet scammers by failing to take proactive steps to police its site, adequately warn its members of fraudulent activity, or remove or block such profiles.

60. Plaintiffs and others members of the Class entered into contracts for the service Match advertises (*i.e.,* a legitimate resource for single adults) without knowledge or information regarding the actual state of operation of Match's site.

61. The Plaintiffs and members of the Class, as parties to the contract, understood that the contract was intended to provide each paying subscriber with access to a legitimate and genuine online dating service in exchange for the payment of monthly subscription fees.

62. Match breached the aforementioned contract by intentionally, purposefully and/or negligently providing and presenting, through its website, an artificially inflated membership base comprised of inactive profiles designated as active, and false and/or fraudulent profiles placed by internet scammers and others. Match further breached its Agreement by failing to take any reasonable steps to remove such profiles, by failing to properly take steps to police its site, and otherwise by failing to ensure the integrity and legitimacy of its services.

63. As a direct and proximate result of Match's breach of contract, Plaintiffs and others similarly situated have and will continue to suffer damages in terms of subscription fees paid.

## COUNT II

### *Breach of Implied Covenant of Good Faith and Fair Dealing*

64. Plaintiffs incorporate by reference and re-allege each and every allegation set forth above as though fully set forth herein.

65. The contract between Match, Plaintiffs and other members of the Class imposed on each party a duty of good faith and fair dealing in the performance of the contract.

66. Match breached its duty of good faith and fair dealing by intentionally, purposefully and/or negligently providing and presenting, through its website, an artificially inflated membership base comprised of inactive profiles designated as active, and false and/or fraudulent profiles placed by internet scammers and others. Match further breached its duty of good faith and fair dealing by failing to take any reasonable steps to remove such profiles, by

failing to properly take steps to police its site, and otherwise by failing to ensure the integrity and legitimacy of its services.

67. The conduct of Match was conscious, deliberate and unfairly frustrated the agreed upon purpose of the parties in carrying out the Agreement.

68. The conduct of Match disappointed the reasonable expectations of Plaintiffs and other members of the Class, thereby depriving them of the benefits of the Agreement.

69. As a direct and proximate result of Match's breach of good faith and fair dealing, Plaintiffs and others similarly situated have and will continue to suffer damages in terms of subscription fees paid.

## COUNT III

### *Negligent Misrepresentation*

70. Plaintiffs incorporate by reference and re-allege each and every allegation set forth above as though fully set forth herein.

71. Match represented via the Internet and elsewhere that it offered a legitimate and genuine online dating service in exchange for the payment of a monthly subscription fee.

72. Match represented in the Agreement that it provided a "service for single adults to meet each other online." Agreement ¶*Intro*.

73. These representations were material facts that were both essential to and formed the essence of the Agreement.

74. Match made these representations with the intent to induce Plaintiffs and Class members to act upon them.

75. At the time Match made these representations, Match knew or should have known that these representations were false or made them without knowledge of their truth or veracity.

76. Plaintiffs and Class members justifiably and detrimentally relied on these representations and, as a proximate result thereof, have and will continue to suffer damages in terms of subscription fees paid.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment and relief as follows:

A. Declaring that this lawsuit is properly maintainable as a class action and certifying Plaintiffs as representatives of the Class;

B. Declaring that Match breached its contract with Plaintiffs and the members of the Class;

C. Declaring that Match breached its implied covenant of good faith and fair dealing;

D. Declaring that Match made and continues to make negligent misrepresentations about the nature and legitimacy of its services;

E. Awarding damages against Match in an amount to be determined at trial, together with prejudgment interest at the maximum rate allowable by law;

F. Permanently enjoining and restraining Match from engaging in the wrongful and deceptive practices complained of herein;

G. Awarding Plaintiff and the Class their costs and disbursements and reasonable allowances for Plaintiff's counsel and experts' fees and expenses; and

H. Granting such other and further relief as may be just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiffs and members of the Class demand a trial by jury of all issues so triable.

Dated: December 30, 2010.

Respectfully submitted,

s/Roger F. Claxton _____
Roger F. Claxton
State Bar No. 04329000
10000 N. Central Expressway
Suite 725
Dallas, Texas  75231-2351
Tel. (214) 969-9029
Fax: (214) 953-0583
roger@claxtonlaw.com

**HARWOOD FEFFER LLP**
Jeffrey M. Norton
Randolph M. McLaughlin
488 Madison Avenue
New York, New York 10022
Tel: (212) 935-7400
Fax: (212) 753-3630
jnorton@hfesq.com
rmclaughlin@hfesq.com

**LEVER & STOLZENBERG, LLP**
David B. Lever
Howard B. Stolzenberg
Evan Spencer
303 Old Tarrytown Road
White Plains, New York 10603
Tel. (914) 299-9191
Fax: (914) 288-9197
dlever@lsnjurylaw.com
hstolzenberg@lsinjurylaw.com
evanspenceresq@aol.com