**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | |
|---|---|
| DAVID ROBINSON, ALLEN STONE, NANCY MALSOM, CLAIRE KILCOYNE, MICHAEL BOURNE, MARY ANNE BURGAN, JANICE BOND, RILE MARBERRY, RICHARD DICOSOLA, and MIKE CIPRIANI, Individually and On Behalf Of All Others Similarly Situated, | Case No. 3:10-cv-02651-L |
| Plaintiffs, | |
| v. | **JURY TRIAL DEMAND** |
| MATCH.COM, LLC, | |
| Defendant. | |

## AMENDED CLASS ACTION COMPLAINT

Plaintiffs, David Robinson, Allen Stone, Nancy Malsom, Claire Kilcoyne, Michael Bourne, Mary Anne Burgan, Janice Bond, Rile Marberry, Richard Dicosola, and Mike Cipriani ("Plaintiffs") by their undersigned attorneys, bring this class action complaint against Match.com, LLC ("Match" or the "Company"). Plaintiffs' allegations are based upon knowledge as to their own acts and upon information and belief as to all other matters. Plaintiffs' information and belief is based upon, among other things, a comprehensive investigation undertaken by their attorneys, which included, without limitation: (a) interviews of witnesses, including former employees of Match and the Company's subcontractors; (b) review of Match's published materials and information available on the internet; (c) analysis of public records and documents, including the Company's filings with the Securities and Exchange Commission; and (d) an exhaustive analysis of thousands of inactive, fake

and fraudulent profiles posted on Match's website.  Plaintiffs believe that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.      This is a class action against Match for violations of Section 17.50 (a)(3) of the Deceptive Trade Practices-Consumer Protection Act ("DTPA"), breach of contract, and breach of the implied covenant of good faith and fair dealing.  Plaintiffs and members of the class (the "Class") are all current or past paying members or subscribers to Match's online dating service.

2.      As alleged herein, Match violated the DTPA and breached its Terms of Use Agreement (the "Agreement")[1] by taking advantage of its unwitting consumers (including the Plaintiffs and members of the Class) to a grossly unfair degree by advertising itself as a legitimate service for single adults when in fact Match's service is little more than a scheme to amass subscribers based on false and deceptive marketing and through systemic and pervasive unconscionable practices.

3.      While Match purports to have "millions" of active subscribers, *well over half* of the profiles on its site belong to inactive members who have cancelled their membership or allowed their subscriptions to lapse and/or are fake and fraudulent profiles posted by scammers and others. To the extent these types of profiles do not belong to the scammers that proliferate the site (largely unimpeded by Match), the rest are unreachable by legitimate users attempting to avail themselves of the services offered by Match and paid for via subscription fees.

4.      With regard to inactive members (*i.e.*, members who have cancelled their subscriptions and/or allowed their subscriptions to lapse), Match takes virtually no action to remove these profiles (that remain on the system, are searchable by members, appear as and are in fact counted among Match's "active" members), for months and sometimes years after the individuals

---

[1]      A copy of the Agreement is annexed hereto as Exhibit A.

have become inactive. And, Match will only remove profiles after a former subscriber calls to complain and specifically requests its removal.

5.      With regard to the thousands of fake and fraudulent profiles (*i.e.*, profiles likely placed by third-parties for illegitimate and unlawful purposes),  Match likewise makes little to no effort to vet, police, or remove these profiles and thereby permits, condones, and acquiesces in their posting.  Match engaged and continues to in these illegal practices for the purpose of misleading Plaintiffs and other members of the Class into believing that millions of individuals were active members. These practices further exposed Plaintiffs and members of the Class to frauds and other schemes.

6.      Plaintiffs, on their own behalf and as representatives of the Class, seek to recover compensatory damages in the amount of fees paid for subscriptions to the Match site.

7.      Plaintiffs also seek injunctive relief ordering cessation of the wrongful and deceptive practices, implementation of administrative changes designed to remedy current and future problems, improved disclosure to Match members and prospective members regarding the number of active subscribers, Match's actual practices as complained of herein, and revision of the language of the Agreement so as to make its terms clear to class members.

## JURISDICTION AND VENUE

8.      This Court has diversity subject-matter jurisdiction over this class action pursuant to the Class Action Fairness Act of 2005, Pub. L. No. 109-2, 119 Stat. 4 ("CAFA"), which, *inter alia*, amends 28 U.S.C. §1332, at new subsection (d), conferring federal jurisdiction over class actions where, as here: (a) there are 100 or more members in the proposed Class; (b) at least some members of the proposed Class have a different citizenship from Match; and (c) the claims of the proposed Class members exceed the sum or value of five million dollars ($5,000,000) in the aggregate.  *See* 28 U.S.C. §1332(d)(2) and (6).

9.      This Court has personal jurisdiction over the parties because Plaintiffs submit to the jurisdiction of the Court, Match is headquartered in the State of Texas, transacts business within the State of Texas, and by virtue of the fact that Match's executive offices are located in the State, and Match systematically and continually conducts business throughout the State.

10.     Venue is proper because Match is headquartered in this District, conducts substantial business in this District, maintains offices in this District, and because certain of the acts or omissions affecting Class members occurred in this District.

11.     Further, venue is proper in this jurisdiction because the Agreement[2] provides that disputes regarding Match's service shall be governed by the laws of the State of Texas and filed in state or federal court in the state of Texas, Dallas County.

## PARTIES

12.     Plaintiff David Robinson is a resident of Florida, and, at times relevant hereto, a paid subscriber to Match.com's online dating service.

13.     Plaintiff Allen Stone is a resident of New York, and, at times relevant hereto, a paid subscriber to Match.com's online dating service.

14.     Plaintiff Nancy Malsom is a resident of Iowa, and, at times relevant hereto, a paid subscriber to Match.com's online dating service.

15.     Plaintiff Claire Kilcoyne is a resident of Washington, and, at times relevant hereto, a paid subscriber to Match.com's online dating service.

16.     Plaintiff Michael Bourne is a resident of Tennessee, and, at times relevant hereto, a paid subscriber to Match.com's online dating service.

17.     Plaintiff Mary Anne Burgan is a resident of Texas, and, at times relevant hereto, a paid subscriber to Match.com's online dating service.

---

[2]      Further references to specific provisions of the Agreement will be cited as "Agreement ¶__."

18.     Plaintiff Janice Bond is a resident of Texas, and, at times relevant hereto, a paid subscriber to Match.com's online dating service.

19.     Plaintiff Rile Marberry is a resident of Texas, and, at times relevant hereto, a paid subscriber to Match.com's online dating service.

20.     Plaintiff Richard Dicosola is a resident of Texas, and, at times relevant hereto, a paid subscriber to Match.com's online dating service.

21.     Plaintiff Mike Cipriani is a resident of Texas, and, at times relevant hereto, a paid subscriber to Match.com's online dating service.

22.     Defendant Match is a Delaware limited liability corporation that maintains its headquarters and principal place of business in Dallas, Texas.  Match is a wholly owned subsidiary of IAC/Interactive Corp. and operates a website for single adults to meet each other online. Members pay a monthly fee to access all features of the website.  The website is interactive and members use its services to contact each other online.

## CLASS ACTION ALLEGATIONS

23.     Plaintiffs bring this class action on their own behalf and on behalf of all similarly situated individuals who, at any time since December 30, 2006, purchased memberships or renewals of memberships for the Match service.

24.     This action is properly maintainable as a class action.

25.     The Class is so numerous that joinder of all members is impracticable.

26.     The number and identities of class members can easily be determined from the records maintained by Match and/or its agents.  The disposition of their claims in a class action will be of benefit to the parties and to the Court.

27.     A class action is superior to other methods for the fair and efficient adjudication of the claims herein asserted, and no unusual difficulties are likely to be encountered in the

management of this action as a class action. The likelihood of individual Class members prosecuting separate claims is remote.

28.     There is a well-defined community of interest in the questions of law and fact involved affecting members of the Class. Among the questions of law and fact which are common to the Class, and which predominate over questions affecting any individual Class member are, *inter alia*, the following:

(a)     Whether Match violated § 17.50(a)(3) of the DTPA by taking advantage of unwitting consumers' lack of knowledge, ability, experience, and/or capacity to a grossly unfair degree;

(b)     Whether Match breached its contract and common law covenants with Plaintiffs and others similarly situated by: (i) failing to provide the service represented by Match and understood by Plaintiffs and members of the Class to be a legitimate service for single adults; (ii) acting in contravention of the provisions of the Agreement; and (iii) by otherwise acting in bad faith in carrying out the terms of the Agreement; and

(c)     Whether Match breached its contract and common law covenants with Plaintiffs and others similarly situated by, *inter alia*: (i) permitting, condoning, acquiescing, and/or failing to take any remedial steps to curb the posting of fake or fraudulent profiles by international internet scammers or others; (ii) allowing tens of thousands of inactive profiles to appear active for the purpose of artificially inflating its customer base; (iii) sending deceptive emails to Plaintiffs and members of the class that suggested falsely that active members were seeking to contact them for the purpose of securing renewal subscriptions; and (iv) for otherwise engaging in deceptive marketing and business activity that harmed Plaintiffs and members of the Class.

29.     Plaintiffs are members of the Class and are committed to prosecuting this action. Plaintiffs have retained competent counsel experienced in litigation of this nature.  Plaintiffs' claims are typical of the claims of the other members of the Class in that they are seeking compensatory damages for Match's violations of the DTPA, breach of contract, and breach of common law covenants by Match's conduct as alleged herein, the same claims being asserted on behalf of each individual Class member.  Plaintiffs do not have interests antagonistic to or in conflict with those they seek to represent.  Plaintiffs are, therefore, adequate representatives of the Class.

30.     The likelihood of individual Class members prosecuting separate individual actions is remote due to the relatively small loss suffered by each Class member as compared to the burden and expense of prosecuting litigation of this nature and magnitude.  Absent a class action, Match is likely to avoid liability for its wrongdoing, and the Class members are unlikely to obtain redress for the wrongs alleged herein.

31.     Adjudication of this case on a class-wide basis is manageable by this Court.  The contracts that were entered into by Plaintiffs and each Class member throughout the United States and its possessions are the same or so similar as to be legally and factually indistinguishable in all material respects, and under the terms of said agreements Texas law was to be applied to disputes arising thereunder.  As a result, it will not be difficult for the Court or the jury to determine whether Match has breached its contracts for each of the members of the Class.  This Court is an appropriate forum for this dispute.

## COMPLIANCE WITH THE DTPA

32.     On January 25, 2011, in accordance with § 17.505(a) of the DTPA, Plaintiffs Burgan, Bond, Marberry, and Discosola, provided written notice to Defendant (the "DTPA Notice").

33.     In addition, because the claims alleged herein are made on behalf of a proposed class, in accordance with § 17.501(a), Plaintiffs simultaneously mailed a copy of the DTPA Notice to the Office of the Attorney General, Consumer Protection Division, by certified mail return receipt requested, together with a copy of the initial complaint filed in this action.

34.     The DTPA Notice advised the Defendant in great detail of the claims arising under § 17.50(a)(3), including that Match was engaging in the following unconscionable conduct:

     a.    Representing itself as a legitimate service for single adults to meet each other online and accepting subscriptions fees from members and then failing to provide the service represented and offered;

     b.    Negligently and/or fraudulently representing that it had millions of active subscribers when, in fact, well over half of the profiles of the purportedly active subscribers belong to inactive accounts (*i.e.*, accounts that have been canceled or expired) that cannot be contacted, and/or are fake and fraudulent profiles posted by scammers and others;

     c.    Permitting, condoning or acquiescing in the posting of fake or fraudulent profiles by international internet scammers or others; thereby creating the false impression that millions of persons were active members or worse, exposing Claimants and others to frauds and other schemes;

     d.    Failing to accurately disclose its active and reachable subscriber base;

     e.    Falsely labeling inactive profiles as "active";

     f.    Failing to police its site from the proliferation of false and fraudulent profiles;

     g.    Failing to take reasonable steps to remove and block scammers, even after certain profiles have been reported;

     h.    Failing to disclose to subscribers that Match.com's online dating service contains mainly inactive profiles and/or fake profiles from internet scammers;

     i.    Failing to provide adequate information and tools on how to recognize and report scamming activity;

     j.    Failing to monitor and block IP addresses from certain countries from where scamming activity flourishes (*i.e.*, Nigeria, Ghana, Russia, Eastern Europe, Malaysia, and other locations);

     k.    Intentionally leaving profiles of inactive members viewable and searchable on its websites far beyond their date of inactivity or cancellation;

l.   Taking virtually no steps to remove inactive users from view until a complaint is received by the former user of that account;

m.   Falsely labeling profiles as "active within [#] days" or "active within [#] hours" when the accounts belong to cancelled and/or inactive accounts that could not be contacted;

n.   Sending emails of suggested "matches" to its members and inactive members, even though these "matches" belong to inactive members who cannot be contacted;

o.   Sending former and inactive members "winks" falsely informing them that a potential match is trying to contact them in order to bait individuals to renew their subscriptions (only to find out after they do so that the supposed seeker does not exist or cannot be contacted);

p.   Failing to effectively vet new profiles to determine whether they are fake or fraudulent despite easily discernable "red flags" (including repeated use of imagery and language, and use of notorious IP address origins);

q.   Approving and posting different profiles with the same exact photographs and groups of photographs in different cities and towns throughout the United States;

r.   Approving and posting different profiles with the same exact text in different cities and towns throughout the United States;

s.   Approving and posting profiles with individuals under the age of 18 in violation of the Match.com Terms of Use Agreement;

t.   Approving and posting profiles that have email addresses and full names in violation of the Match.com Terms of Use Agreement;

u.   Approving and posting profiles with photographs that depict individuals of incorrect gender;

v.   Approving and posting fraudulent profiles with famous and notorious actors and models;

w.   Falsely representing that Match.com customer care approves each profile individually when in fact profiles are automatically approved;

x.   Falsely representing that there is gender parity on Match.com when in fact the majority of active and legitimate subscribers are male;

y.   Failing to report or investigate scammers that repeatedly post fraudulent profiles on Match.com;

z.   Misleading use of the notice to subscribers that, "We're sorry the profile you were looking for could not be found. Please try another profile," when

such profiles have been removed for violating the Match.com Terms of Use Agreement;

aa.   Failing to effectively police its site to monitor and remove fake and fraudulent member profiles that remain viewable by unwitting members;

bb.   Engaging in fraudulent or misleading business practices for the purpose of inducing individuals to renew their subscriptions, *i.e.,* sending to paid members whose subscription are about to expire an electronic communication, or "wink," that falsely advises the member that persons who are active Match members are trying to contact them;

cc.   Continuously sending emails notifications to former members falsely advising them of potential "matches," in some cases more than a year after the person has deactivated their account, that are in fact profiles of inactive or nonexistent members whose profiles disappear once the individual reactivates their account;

dd.   Falsely representing on the Match.com website that 20,000 people join the online dating service on a daily basis, when Match knew or should have known that the such number is vastly inflated, that the vast majority of its members are fake profiles; and

ee.   Falsely representing on the Match website that 7 out of 10 of Match members are looking for serious long-term relationships when Match knew or should have known that the vast majority of its members are inactive, fake or fraudulent profiles.

35.     The DTPA Notice also included the amount of economic damages and the amount of expenses and attorneys' fees reasonably incurred in asserting the claims against the Defendant.

36.     The sixty-day period to respond to the DTPA Notice expired on March 28, 2011 without Defendant responding or requesting additional time to respond.  Accordingly, Plaintiffs have fulfilled their procedural requirements for filing the within claims.

37.     A copy of the DTPA Notice is annexed hereto as Exhibit B.

## FACTUAL ALLEGATIONS

### The Terms of Use Agreement

38.     Match is an online dating service that represents in its Agreement that it is "the service for single adults to meet each other online." Agreement ¶*Intro.*

39.     Plaintiffs and members of the Class entered into the Agreement by subscribing to Match's internet website, where the Agreement was posted.

40.     By entering into the Agreement, Plaintiffs and members of the Class became active members of Match's service and paid monthly subscription fees.

41.     Under the terms of the Agreement, a person can become a member at no cost with access to limited services.  In order to access additional features and services, including, but not limited to, the ability to communicate with other members, an individual must become a paying subscriber to the service. Agreement ¶3

42.     Under the terms of the Agreement, members agree not to post or transmit to other members or to Match any inaccurate material, misleading, or false information. Agreement ¶9(a). Match further represents in the Agreement that Match may review and delete any content, photos or profiles that in the sole judgment of Match violate the provision of the Agreement. Agreement ¶9(b).

43.     Match reserves the right to investigate and take appropriate legal action in its sole discretion against anyone who violates the provisions of the Agreement, including, but not limited to, removing the offending communication from the service and terminating the membership of violators who post or provide information that is false or misleading. Agreement ¶9(d).

44.     The Agreement also provides that information posted in the profiles of members must be accurate, current and complete. Agreement ¶9(h).

45.     The Agreement also provides that Match will not allow its subscribers to: (a) "impersonate any person or entity"; (b) "'stalk' or otherwise harass any person"; and (c) "forge headers or otherwise manipulate identifiers in order to disguise the origin of any information transmitted through the Service." Agreement ¶10.

46.     Match also represents that in order to protect the integrity of the service, Match reserves the right at any time in its sole discretion to block members from certain IP addresses from accessing the website. Agreement ¶14.

47.     The foregoing provisions of the Agreement would lead a reasonable consumer to believe that the information posted on Match's service was accurate and legitimate, that Match would not tolerate and would actively police and remove any false or misleading information, and that violators of these policies would be removed by Match and have their membership rights terminated.

48.     Match breaches the terms of the Agreement by, *inter alia*:

      a.     failing to vet new profiles;

      b.     failing to remove inactive profiles;

      c.     failing to accurately disclose its active and reachable membership base;

      d.     falsely labeling inactive profiles as "active";

      e.     failing to police its site from the proliferation of false and fraudulent profiles;

      f.     failing to take reasonable steps to remove and block scammers, even after certain profiles have been reported;

      g.     failing to properly warn subscribers of the proliferation of scammers on the site and failing to provide information on how to recognize and report scamming activity;

      h.     failing to monitor and block IP addresses from certain countries from where scamming activity flourishes (*i.e.*, Nigeria, Ghana, Russia, Eastern Europe, Malaysia, and other locations); and

      i.     representing itself as a legitimate service for single adults and accepting subscription fees from members and then failing to provide the service offered.

**Breaches by Match**

49.     Plaintiffs' investigation revealed that Match not only fails to remove the profiles of cancelled subscribers and those whose paid subscriptions have expired but, in fact, intentionally avoids doing so unless and until such persons expressly request that their profiles be removed from the site.

50.     Match fails to remove the profiles of these inactive and former subscribers in order to advertise to the public that Match has "millions" of active members.  By artificially inflating its active membership numbers, Match engaged in a deceptive practice designed to induce consumers to either become or remain paying subscribers.

51.     In the course of Plaintiffs' investigation, it was revealed by numerous former employees of Match and/or their subcontractors that as many as 60% (and by some accounts *more*) of the profiles on the website belong to inactive and/or fake/fraudulent users whose profiles could be viewed by paying members, appear to be active, but who could not be contacted.

52.     Former employees revealed further that Match routinely and intentionally represents that there are significantly more active members on the website than there actually are.

53.     Witnesses, including former employees, reported that some of the tactics Match uses to falsely represent its site include, *inter alia*:

    a.     intentionally leaving profiles of inactive members viewable and searchable on its websites far beyond their date of inactivity or cancellation;

    b.     taking virtually no steps to remove inactive users from view until a complaint is received by the former user of that account;

    c.     falsely labeling profiles as "active within [#] days" when the accounts belong to cancelled and/or inactive accounts that could not be contacted;

d.      improperly sending emails of suggested "matches" to its members and inactive members, even though these "matches" belong to inactive accounts who cannot be contacted;

e.      sending former and inactive members "winks" informing them that a potential match is trying to contact them in order to get them to renew their subscriptions (only to find out after they do so that the supposed seeker does not exist);

f.      failing to effectively vet new profiles to determine whether they are fake or fraudulent despite easily discernable "red flags" (including repeated use of imagery and language, and use of notorious IP address origins);

g.      failing to effectively police its site to monitor and remove fake and fraudulent member profiles that remain viewable by unwitting members; and

h.      failing to warn and protect its members from the pervasive scammers that populate its site.

54.    In 2006-07, members previously were able to hide their profiles by setting their accounts manually to "inactive" or "hidden."  However, in 2008, that policy was changed so that only Match corporate employees could block a member's profile from view.

55.    The Match database is and was littered with names and faces of numerous individuals who were unreachable.  A substantial percentage of the profiles were not and are not real members, but are instead, "filler profiles."

56.    Match does not have adequate safeguards to protect its subscribers from scammers who regularly access the site and post false profiles in order to mislead and commit frauds and other crimes against subscribers.  Further, Match does not adequately police its website to ensure that subscribers are in fact legitimate members who are "interested in meeting each other" as the Agreement provides.

57.     When new members submit a profile, they are told, "We have your profile and it's now being read, like all submissions, by our Customer Care team. Once it's approved – usually within 24 hours – we'll send you an email to let you know it's live on the site."

58.     Despite Match's representation (*i.e.*, that Match is engaging in an eyes-on approval process), this is, in fact, false.   Indeed, new profiles are "approved" and posted almost instantaneously, illustrating that the approval process is mere window dressing to further deceive users into a sense of security.

59.     In the course of the Plaintiffs' investigation, former employees of Match, or their subcontractors, as well as other witnesses with knowledge revealed that upwards of 60% of the profiles (and by some reports more) were and are either inactive former users or fake or fraudulently posted by international internet scammers seeking to engage in identity theft or lure members in fraudulent schemes.

60.     Witnesses also advised that little, if any, proactive steps were or are taken by Match to ensure that profiles posted by scammers were policed and removed.   In fact, only when a subscriber complains about a certain profile is any investigation undertaken to determine if the profile is fraudulent.

61.     Despite Match's representation that it may review and delete any content, photos or profiles that in violate its terms (Agreement ¶9(b)), thousands of profiles remain on Match that are fake or fraudulent.  In numerous instances, the same photograph or groups of photographs and the same text and descriptions are used for hundreds of different profiles with the profiles indicating that the same person (albeit different user names) resides in different parts of the United States.

62.     In numerous instances the profile photos attached to these fake and fraudulent profiles are of pornographic actresses, celebrities, and models, seemingly stolen from independent websites.

63.    In addition, profiles are listed as belonging to members in the United States when they are in fact posted using IP addresses originating in Nigeria, Russia, Eastern Europe, Malaysia, Ghana, and other regions notorious for being hotbeds of internet scamming activity.

64.    Numerous computer technologies exist that would allow Match to effectively and efficiently police its website for the benefit and safety of its customers, including, but not limited to, photograph and key word recognition software (to identify use of the same photographs and/or same text in multiple profiles) and IP address and email recognition software (to identify users abroad from certain geographic regions who fraudulently post profiles domestically for illegal purposes).  However, despite its existence and availability, Match fails to utilize such technology or take any reasonable steps to ensure the integrity of its site.

65.    Other dating websites, including Match's own Japanese affiliate, take steps to validate users' identities through use of certain proofs of identity, such as legal identification and proof of employment. Other users can then see whether a profile has any validated information. Match takes no such steps to corroborate whether new profiles provide accurate personal information about the individual who subscribed.

66.    The reason Match does not take any serious measures to rid its site of inactive, fake or fraudulent profiles, and in fact takes steps to ensure such profiles remain on the site, is because Match expressly and publicly relies on the artificially inflated number of profiles to demonstrate that it is a growth company, to gain prospective members and their payment for joining the site, and to retain paying subscribers.

67.    Match also relies on the fact that the appearance of gender parity is achieved, albeit artificially, by virtue of the fact that most fake and fraudulent profiles are females and the makeup of actual active users is heavily skewed towards single males.

68.     Match also engages in fraudulent or misleading or unconscionable business practices to induce members of the Class to renew their subscriptions.  At or about the time that a paid member's subscription is about to expire, Match and/or its agents sends to such members an electronic communication, or "wink," that advises the member that persons who are active Match members are trying to contact them.  In order to respond to the purported request, the member must renew his/her membership.  Once such membership is renewed, either the profile of the purportedly interested person disappears or is inactive.  Thus, Match acquires paid subscriptions by posting false or misleading information that is prohibited by the Agreement.

69.     Match also continues to send emails notifications to former members alerting them of potential "matches," in some cases more than a year after the person has deactivated their account, that similarly evaporate once the individual reactivates their account.

70.     In other cases, Match falsely labels profiles as "active within [#] days" or "active within [#] hours" when the accounts belong to cancelled and/or inactive accounts that cannot be contacted.

**Plaintiffs and Members of the Class Suffer**

71.     By virtue of their status as paying subscribers of Match, Plaintiffs and other members of the Class were subjected regularly to Match's unconscionable and deceptive conduct as alleged herein.

72.     Plaintiffs and members of the Class were deprived the benefit of their bargain when Match: (i) failed to take reasonable steps to insure the integrity and legitimacy of its site; (ii) failed to take reasonable steps to police and remove profiles that were fake, fraudulent, and inactive; (iii) failed to take reasonable steps to block members who engaged in illegitimate and illegal activity when the same was discovered; (iv) artificially inflated its membership base and failed to accurately disclose the number of legitimate paying subscribers; and (v) engaged in deceptive practices like

falsely labeling profiles as active and sending emails telling members that someone was trying to contact them.

73.    As a result of the foregoing, Plaintiffs and others similarly situated suffered damages, including, but not limited, to the cost of their subscriptions and/or renewal of same.

## COUNT I

### *Violation of § 17.50(a)(3) of the Texas Deceptive Trade Practices Act*

74.    Plaintiffs incorporate by reference and re-allege each and every allegation set forth above as though fully set forth herein.

75.    Defendant's conduct described herein constitutes a violation of § 17.41 et seq., of the DTPA.  Plaintiffs are consumers, as described in § 17.50 of the DTPA, who purchased or sought to purchase goods or services from Defendant.

76.    The DTPA allows a consumer to maintain a cause of action based on the use or employment of a false, misleading or deceptive trade practice by any person, and to remedy unconscionable conduct. § 17.50(a).  Plaintiffs and members of the class are consumers within the meaning of the DTPA, and are entitled to bring this action under the DTPA.

77.    Match violated § 17.50(a)(3) of the DTPA by knowingly engaging in unconscionable conduct and/or an unconscionable course of conduct with regard to how it markets and operates its online dating service.  Specifically, to the detriment of Plaintiffs and members of the Class, Match took advantage of the lack of knowledge, ability, experience, or capacity of consumers to a grossly unfair degree.  Match's conduct as described herein was a producing cause of damages to Plaintiffs and members of the Class.

78.    Plaintiffs and members of the Class suffered economic damages as a result of Defendant's violation of the DTPA and they are also entitled to relief under DTPA § 17.50(b)(2) and (3).  Plaintiffs are also entitled to attorney fees under the DTPA.

## COUNT II

### *Breach of Contract*

79.     Plaintiffs incorporate by reference and re-allege each and every allegation set forth above as though fully set forth herein.

80.     Plaintiffs and members of the Class entered into the Agreement with Match when they became paying subscribers to Match's online dating website.

81.     Plaintiffs and others members of the Class entered into contracts for the service Match advertises (*i.e.,* a legitimate resource for single adults) without knowledge or information regarding the actual state of operation of Match's site.

82.     The Agreement purported to provide each paying subscriber with access to a legitimate and genuine online dating service in exchange for the payment of monthly subscription fees.

83.     Match breached the Agreement by intentionally, purposefully and/or negligently engaging in the conduct alleged herein in violation of the terms of the Agreement.  Match further breached the Agreement by failing to take reasonable steps to ensure the integrity and legitimacy of its services.

84.     As a direct and proximate result of Match's breach of the Agreement, Plaintiffs and others similarly situated have and will continue to suffer damages in terms of subscription fees paid. Plaintiffs are also entitled to attorney fees for breach of contract (Tex. Civ. Prac. & Rem. Code, Ch. 38).

## COUNT III

### *Breach of Implied Covenant of Good Faith and Fair Dealing*

85.     Plaintiffs incorporate by reference and re-allege each and every allegation set forth above as though fully set forth herein.

86.     The contract between Match, Plaintiffs and other members of the Class imposed on each party a duty of good faith and fair dealing in the performance of the contract.

87.     Match breached its duty of good faith and fair dealing by intentionally, purposefully and/or negligently engaging in the conduct alleged herein in violation of the terms of the Agreement.  Match further breached the Agreement by failing to take reasonable steps to ensure the integrity and legitimacy of its services.

88.     The conduct of Match was conscious, deliberate and unfairly frustrated the agreed upon purpose of the parties in carrying out the Agreement.

89.     The conduct of Match deprived the Plaintiffs and members of the Class of the benefit of their bargain.

90.     As a direct and proximate result of Match's breach of good faith and fair dealing, Plaintiffs and others similarly situated have and will continue to suffer damages in terms of subscription fees paid.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment and relief as follows:

A.     Declaring that this lawsuit is properly maintainable as a class action and certifying Plaintiffs as representatives of the Class;

B.     Declaring that Match violated § 17.50(a)(3) of the Texas Deceptive Trade Practices Act;

C.     Declaring that Match breached its contract with Plaintiffs and the members of the Class;

D.     Declaring that Match breached its implied covenant of good faith and fair dealing;

E.      Awarding compensatory and treble damages against Match in an amount to be determined at trial, together with prejudgment interest at the maximum rate allowable by law;

F.      Ordering injunctive relief, including permanently enjoining and restraining Match from engaging in the wrongful and deceptive practices complained of herein and ordering full disclosure of Match's actual practices, and the entry of such other orders as may be necessary or appropriate to restore to Plaintiffs and the class, money acquired in violation of the DTPA (DTPA §17.50(b)(3));

G.      Awarding Plaintiff and the Class their costs and disbursements and reasonable allowances for Plaintiff's counsel and experts' fees and expenses; and

H.      Granting such other and further relief as may be just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiffs and members of the Class demand a trial by jury of all issues so triable.

Dated:  June 3, 2011

Respectfully submitted,

By:    _s/ Roger F. Claxton_
          Roger F. Claxton
          State Bar No. 04329000
          10000 N. Central Expressway, Suite 725
          Dallas, Texas  75231-2351
          Tel. (214) 969-9029
          Fax: (214) 953-0583
          roger@claxtonlaw.com

          **HARWOOD FEFFER LLP**
          Jeffrey M. Norton
          Randolph M. McLaughlin
          488 Madison Avenue
          New York, New York 10022
          Tel: (212) 935-7400
          Fax: (212) 753-3630
          jnorton@hfesq.com
          rmclaughlin@hfesq.com

**LEVER & STOLZENBERG, LLP**
David B. Lever
Howard B. Stolzenberg
Evan Spencer
303 Old Tarrytown Road
White Plains, New York 10603
Tel. (914) 288-9191
Fax: (914) 288-9197
dlever@lsinjurylaw.com
hstolzenberg@lsinjurylaw.com
EvanSpencerEsq@aol.com

*Counsel for Plaintiffs and the Proposed Class*

# EXHIBIT
# A

match.com®

sign in

account   mobile   help

The Beginning. Start yours »

Home     Search     Matches     Daily 5     Messages     Profile

NEW!  Rev Up Your Love Life With These Tips!   GO ››

## Match.com Terms of Use Agreement

Welcome to Match.com, the service for single adults to meet each other online, operated by Match.com, L.L.C. ("Match.com"). By using the Match.com Website, (the "Website") you agree to be bound by these Terms of Use (this "Agreement"), whether or not you register as a member of Match.com ("Member"). If you wish to become a Member and make use of the Match.com service (the "Service"), please read these Terms of Use. **If you object to anything in this Agreement or the Match.com Privacy Policy, do not use the Website or the Service.** The Terms of Use are subject to change by Match.com at any time, effective upon posting on the Match.com website, and your use of the Service after such posting will constitute acceptance by you of such changes.

1. **Acceptance of Terms of Use Agreement.**

   a. **Electronic Agreement.** This Agreement is an electronic contract that sets out the legally binding terms of your use of the Website and your membership in the Service. This Agreement may be modified by Match.com from time to time, such modifications to be effective upon posting by Match.com on the Website. This Agreement includes Match.com's Acceptable Use Policy for Content Posted on the Website, Match.com's Privacy Policy, Match.com's subscription policies and any notices regarding the Website. By accessing the Website or becoming a Member, you accept this Agreement and agree to the terms, conditions and notices contained or referenced herein.

   b. **Electronic Form.** By accessing the Website or becoming a Member, you consent to have this Agreement provided to you in electronic form.

   c. **Non-electronic Copy.** You have the right to receive this Agreement in non-electronic form. You may request a non-electronic copy of this Agreement either before or after you electronically sign the Agreement. To receive a non-electronic copy of this Agreement, please Contact Us online or send a letter and self-addressed stamped envelope to: Match.com, P.O. Box 12305, Dallas, TX 75225.

   d. **Withdrawing Your Consent.** You have the right at any time to withdraw your consent to have this Agreement provided to you in electronic form.

      **(i) Effect.** Should you choose to withdraw your consent to have this Agreement provided to you in electronic form, we will discontinue your then-current username and password. This means that you will not have the right to use the Service unless, and until, we issue you a new username and password. We only will issue you a new username and password after we receive a signed copy of a non-electronic version of this Agreement, which we will send to you upon request.

**(ii) Notice.** To withdraw your consent and/or request a non-electronic copy of this Agreement, please Contact Us online or send a letter and self-addressed stamped envelope to: Match.com, P.O. Box 12305, Dallas, TX 75225.

**(iii) Prospective Nature.** Your withdrawal of consent shall be effective within a reasonable time after we receive your withdrawal notice described above. Your withdrawal of consent will not affect the legal validity or enforceability of the Agreement provided to, and electronically signed by, you prior to the effective date of your withdrawal.

e. **Access and Retention.** In order to access and retain this electronic Agreement, you must have access to the World Wide Web, either directly or through devices that access web-based content, and pay any service fees associated with such access. In addition, you must use all equipment necessary to make such connection to the World Wide Web, including a computer and modem or other access device. Please print a copy of this document for your records. To retain an electronic copy of this Agreement, you may save it into any word processing program. Via, the Website, we will notify you of any changes in the hardware or software requirements needed to access and/or retain this Agreement that create a material risk that you will not be able to continue to access and/or retain this electronic Agreement.

2. **Eligibility.** You must be at least eighteen (18) years of age and single or separated from your spouse to register as a member of Match.com or use the Website. Membership in the Service is void where prohibited. By using the Website, you represent and warrant that you have the right, authority and capacity to enter into this Agreement and to abide by all of the terms and conditions of this Agreement.

3. **Membership and Subscription; Pricing.** You may become a Member of the Service at no cost. As a Member, you will have the ability to participate in some, but not all, of the features and services available within the Service. In order to access additional features and services, including the ability to communicate with other Members, you must become a paying subscriber to the Service. Please see Subscribe for a description of the current subscription plans and their prices. Please note that the subscription policies that are disclosed to you in subscribing to the service are deemed part of this Agreement. Please see Billing Details for a description of such policies. For purposes of this Agreement the term "Member" includes subscribers, unless where its usage indicates otherwise. From time to time, Match.com may remove the profiles of non-subscribers.

4. **Term.** This Agreement will remain in full force and effect while you use the Website and/or are a Member. You may terminate your membership and/or subscription at any time, for any reason, by following the instructions on the Resign pages in Account Settings, or you may Contact Us online or send Match.com written notice of termination to Match.com, P.O. Box 12305, Dallas, TX 75225. If you resign or cancel your membership and/or subscription via the Match.com site, to help Match.com analyze and improve the Service, you may be asked to provide a reason for your resignation/cancellation. You may bypass this brief resignation survey page and continue the resignation/cancellation process by clicking the "Continue Cancellation" or other similar button on the page. If you terminate your subscription, your subscription will remain active until the end of your then-current subscription period (that is, the subscription period through which you had paid prior to your termination). Match.com may terminate your membership and/or subscription by sending notice to you at the email address you provide in your application for membership, or such other email address as you may later provide to Match.com. **If Match.com terminates your membership in the Service because you have breached this Agreement, you will not be entitled to any refund of unused subscription fees.** All decisions regarding the termination of accounts shall be made in the sole discretion of Match.com. Match.com is not required to provide you notice prior to terminating your membership and/or subscription. Match.com is not required, and may be prohibited, from disclosing a reason for the termination of your account. Even after your membership or subscription is terminated, this Agreement will remain in effect. All terms that by their nature may survive termination of this Agreement shall be deemed to survive such termination.

5. **Non-commercial Use by Members.** The Website is for the personal use of individual Members only and may not be used in connection with any commercial endeavors. Organizations, companies, and/or businesses may not become Members and should not use the Service or the Website for any purpose. Illegal and/or

unauthorized uses of the Website, including collecting usernames and/or email addresses of members by
electronic or other means for the purpose of sending unsolicited email and unauthorized framing of or linking to
the Website may be investigated, and appropriate legal action will be taken, including without limitation, civil,
criminal, and injunctive redress. Use of the Website is with the permission of Match.com, which may be revoked
at any time, for any reason, in Match.com's sole discretion.

6. **Account Security.** You are responsible for maintaining the confidentiality of the username and password that
you designate during the Registration process, and you are fully responsible for all activities that occur under
your username and password. You agree to (a) immediately notify Match.com of any unauthorized use of your
username or password or any other breach of security, and (b) ensure that you exit from your account at the
end of each session. Match.com will not be liable for any loss or damage arising from your failure to comply
with this provision. You should use particular caution when accessing your account from a public or shared
computer so that others are not able to view or record your password or other personal information. If you
share your computer with others, you may wish to consider disabling your auto-sign in feature if you have
linked your Window's Live ID to your Match.com account.

**7. YOUR INTERACTIONS WITH OTHER MEMBERS. YOU ARE SOLELY RESPONSIBLE FOR YOUR
INTERACTIONS WITH OTHER MEMBERS. YOU UNDERSTAND THAT MATCH.COM DOES NOT IN ANY WAY
SCREEN ITS MEMBERS, NOR DOES MATCH.COM INQUIRE INTO THE BACKGROUNDS OF ITS MEMBERS
OR ATTEMPT TO VERIFY THE STATEMENTS OF ITS MEMBERS. MATCH.COM MAKES NO
REPRESENTATIONS OR WARRANTIES AS TO THE CONDUCT OF MEMBERS OR THEIR COMPATIBILITY
WITH ANY CURRENT OR FUTURE MEMBERS. IN NO EVENT SHALL MATCH.COM BE LIABLE FOR ANY
DAMAGES WHATSOEVER, WHETHER DIRECT, INDIRECT, GENERAL, SPECIAL, COMPENSATORY,
CONSEQUENTIAL, AND/OR INCIDENTAL, ARISING OUT OF OR RELATING TO THE CONDUCT OF YOU OR
ANYONE ELSE IN CONNECTION WITH THE USE OF THE SERVICE, INCLUDING WITHOUT LIMITATION,
BODILY INJURY, EMOTIONAL DISTRESS, AND/OR ANY OTHER DAMAGES RESULTING FROM
COMMUNICATIONS OR MEETINGS WITH OTHER REGISTERED USERS OF THIS SERVICE OR PERSONS
YOU MEET THROUGH THIS SERVICE. YOU AGREE TO TAKE REASONABLE PRECAUTIONS IN ALL
INTERACTIONS WITH OTHER MEMBERS OF THE SERVICE, PARTICULARLY IF YOU DECIDE TO MEET
OFFLINE OR IN PERSON. IN ADDITION, YOU AGREE TO REVIEW MATCH.COM'S DATING SAFETY TIPS
PRIOR TO USING THE SERVICE. YOU UNDERSTAND THAT MATCH.COM MAKES NO GUARANTEES, EITHER
EXPRESS OR IMPLIED, REGARDING YOUR ULTIMATE COMPATIBILITY WITH INDIVIDUALS YOU MEET
THROUGH THE SERVICE. YOU SHOULD NOT PROVIDE YOUR FINANCIAL INFORMATION (FOR EXAMPLE,
YOUR CREDIT CARD OR BANK ACCOUNT INFORMATION) TO OTHER MEMBERS.**

8. **Content on Match.com.**

   **(a) Proprietary Rights.** Match.com owns and retains all
proprietary rights in the Website and the Service. The
Website contains the copyrighted material, trademarks, and
other proprietary information of Match.com, and its licensors.
Except for that information which is in the public domain or
for which you have been given written permission, you may
not copy, modify, publish, transmit, distribute, perform,
display, or sell any such proprietary information.

   **(b) Reliance on Content, Advice, Etc.** Opinions, advice,
statements, offers, or other information or content made
available through the Service, but not directly by Match.com,
are those of their respective authors, and should not
necessarily be relied upon. Such authors are solely
responsible for such content. **Match.com does not: (i)
guarantee the accuracy, completeness, or usefulness of
any information on the Service, or (ii) adopt, endorse or
accept responsibility for the accuracy or reliability of any
opinion, advice, or statement made by any party that
appears on the Website. Under no circumstances will
Match.com or its affiliates be responsible for any loss or
damage resulting from your reliance on information or
other content posted on the Website or transmitted to or
by any Members.**

9. **Content Posted by You on Match.com.**

Case 3:10-cv-02651-L   Document 23   Filed 06/03/11   Page 27 of 39   PageID 116

a. You are solely responsible for the Content that you publish or display (hereinafter, "post") on the Service, or transmit to other Members. You will not post on the Service, or transmit to other Members, any defamatory, inaccurate, abusive, obscene, profane, offensive, sexually oriented, threatening, harassing, racially offensive, or illegal material, or any material that infringes or violates another party's rights (including, but not limited to, intellectual property rights, and rights of privacy and publicity). You will not provide inaccurate, misleading or false information to the Company or to any other Member. If information provided to Match.com, or another Member, subsequently becomes inaccurate, misleading or false, you will promptly notify Match.com of such change.

b. You understand and agree that Match.com may review and delete any content, messages, double-blind emails, photos or profiles (collectively, "Content"), in each case in whole or in part, that in the sole judgment of Match.com violate this Agreement or which might be offensive, illegal, or that might violate the rights, harm, or threaten the safety of Members.

c. By posting Content to any public area of Match.com, you automatically grant, and you represent and warrant that you have the right to grant, to Match.com, its affiliates, licensees and successors, an irrevocable, perpetual, non-exclusive, fully paid, worldwide license to use, copy, perform, display, reproduce, adapt, modify and distribute such information and content and to prepare derivative works of, or incorporate into other works, such information and content, and to grant and authorize sublicenses of the foregoing. You further represent and warrant that public posting and use of your content by Match.com will not infringe or violate the rights of any third party.

d. The following is a partial list of the kind of Content that is illegal or prohibited on the Website. Match.com reserves the right to investigate and take appropriate legal action in its sole discretion against anyone who violates this provision, including without limitation, removing the offending communication from the Service and terminating the membership of such violators. It includes, but is not limited to, Content that:

- is patently offensive to the online community, such as Content that promotes racism, bigotry, hatred or physical harm of any kind against any group or individual;
- harasses or advocates harassment of another person;
- involves the transmission of "junk mail", "chain letters," or unsolicited mass mailing or "spamming";
- promotes information that you know is false, misleading or promotes illegal activities or conduct that is abusive, threatening, obscene, defamatory or libelous;
- promotes an illegal or unauthorized copy of another person's copyrighted work, such as providing pirated computer programs or links to them, providing information to circumvent manufacture-installed copy-protect devices, or providing pirated images, audio or

video, or links to pirated images, audio or video files;

- contains restricted or password only access pages, or hidden pages or images (those not linked to or from another accessible page);
- provides material that exploits people under the age of 18 in a sexual or violent manner, or solicits personal information from anyone under the age of 18;
- provides instructional information about illegal activities such as making or buying illegal weapons, violating someone's privacy, or providing or creating computer viruses;
- solicits passwords or personal identifying information for commercial or unlawful purposes from other users; and
- engages in commercial activities and/or sales without our prior written consent such as contests, sweepstakes, barter, advertising, and pyramid schemes.

e. Your use of the Service, including but not limited to the Content you post on the Service, must be in accordance with any and all applicable laws and regulations.

f. You may not include in your Member profile any telephone numbers, street addresses, last names, URLs or email addresses.

g. You may not engage in advertising to, or solicitation of, other Members. This includes but is not limited to solicitation or advertising to buy or sell any products or services through the Service or to attend parties or other social functions or networking for commercial purposes. You may not transmit any chain letters or junk email to other Members. Although Match.com cannot monitor the conduct of its Members off the Website, it is also a violation of these rules to use any information obtained from the Service in order to harass, abuse, or harm another person, or in order to contact, advertise to, solicit, or sell to any Member without their prior explicit consent. In order to protect our Members from such advertising or solicitation, we reserve the right to restrict the number of emails which a Member may send to other Members in any 24-hour period to a number which we deem appropriate in our sole discretion.

h. All information you include in your Member profile must be accurate, current and complete.

10. **Prohibited Activities.** Match.com reserves the right to investigate and terminate your membership if you have misused the Service, or behaved in a way which could be regarded as inappropriate or whose conduct is unlawful or illegal. The following is a partial list of the type of actions that you may not engage in with respect to the Service:

- You will not impersonate any person or entity.
- You will not "stalk" or otherwise harass any person.
- You will not express or imply that any statements you make are endorsed by Match.com without our specific prior written consent.
- You will not use any robot, spider, site search/retrieval application, or other manual or automatic device or process to retrieve, index, "data mine", or in any way reproduce or circumvent the navigational structure or presentation of the Service or its contents.
- You will not post, distribute or reproduce in any way any copyrighted material, trademarks, or other proprietary information without obtaining the prior consent of the owner of such proprietary rights.
- You will not remove any copyright, trademark or other proprietary rights notices contained in the Service.

- You will not interfere with or disrupt the Services or the site or the servers or networks connected to the Services or the site.
- You will not post, email or otherwise transmit any material that contains software viruses or any other computer code, files or programs designed to interrupt, destroy or limit the functionality of any computer software or hardware or telecommunications equipment.
- You will not forge headers or otherwise manipulate identifiers in order to disguise the origin of any information transmitted through the Service.
- You will not "frame" or "mirror" any part of the Service or the Website, without Match.com's prior written authorization. You also shall not use meta tags or code or other devices containing any reference to Match.com or the Service or the site in order to direct any person to any other web site for any purpose.
- You will not modify, adapt, sublicense, translate, sell, reverse engineer, decipher, decompile or otherwise disassemble any portion of the Service or the Website or any software used on or for the Service or cause others to do so.

11. **Customer Service.** Match.com provides assistance and guidance through its customer care representatives. When communicating with our customer care representatives, you may not to be abusive, obscene, profane, offensive, sexist, threatening, harassing, racially offensive, or otherwise behave inappropriately. If we feel that your behavior towards any of our customer care representatives or other employees is at any time threatening or offensive, we reserve the right to immediately terminate your membership and you will not be entitled to any refund of unused subscription fees.

12. **Subscriptions; Charges on Your Billing Account.**

**(a) General.** Match.com bills you through an online account (your "Billing Account") for use of the Service. You agree to pay Match.com all charges at the prices then in effect for any use of the Service by you or other persons (including your agents) using your Billing Account, and you authorize Match.com to charge your chosen payment provider (your "Payment Method") for the Service. You agree to make payment using that selected Payment Method. Match.com reserves the right to correct any errors or mistakes that it makes even if it has already requested or received payment.

**(b) Recurring Billing.** Most subscription plans to the Service consist of an initial period, for which there is a one time charge, followed by recurring period charges as agreed to by you. By entering into this Agreement, you acknowledge that your subscription has an initial and recurring payment feature and you accept responsibility for all recurring charges prior to cancellation. MATCH.COM MAY SUBMIT PERIODIC CHARGES (E.G., MONTHLY) WITHOUT FURTHER AUTHORIZATION FROM YOU, UNTIL YOU PROVIDE PRIOR NOTICE (CONFIRMED IN WRITING UPON REQUEST BY MATCH.COM) THAT YOU HAVE TERMINATED THIS AUTHORIZATION OR WISH TO CHANGE YOUR PAYMENT METHOD. SUCH NOTICE WILL NOT AFFECT CHARGES SUBMITTED BEFORE MATCH.COM REASONABLY COULD ACT. TO TERMINATE YOUR AUTHORIZATION OR CHANGE YOUR PAYMENT METHOD, GO TO ACCOUNT SETTINGS.

**(c) Current Information Required.** YOU MUST PROVIDE CURRENT, COMPLETE AND ACCURATE INFORMATION FOR YOUR BILLING ACCOUNT. YOU MUST PROMPTLY UPDATE ALL INFORMATION TO KEEP YOUR BILLING ACCOUNT CURRENT, COMPLETE AND ACCURATE (SUCH AS A CHANGE IN BILLING ADDRESS, CREDIT CARD NUMBER, OR CREDIT CARD EXPIRATION DATE), AND YOU MUST PROMPTLY NOTIFY MATCH.COM IF YOUR PAYMENT METHOD IS CANCELED (E.G., FOR LOSS OR THEFT) OR IF YOU BECOME AWARE OF A POTENTIAL BREACH OF SECURITY, SUCH AS THE

UNAUTHORIZED DISCLOSURE OR USE OF YOUR USER NAME
OR PASSWORD. CHANGES TO SUCH INFORMATION CAN BE
MADE AT ACCOUNT SETTINGS. IF YOU FAIL TO PROVIDE
MATCH.COM ANY OF THE FOREGOING INFORMATION, YOU
AGREE THAT MATCH.COM MAY CONTINUE CHARGING YOU
FOR ANY USE OF THE SERVICE UNDER YOUR BILLING
ACCOUNT UNLESS YOU HAVE TERMINATED YOUR
SUBSCRIPTION FOR THE SERVICE (CONFIRMED BY YOU IN
WRITING UPON REQUEST BY MATCH.COM).

**(d) Payment Method.** The terms of your payment will be
based on your Payment Method and may be determined by
agreements between you and the financial institution, credit
card issuer or other provider of your chosen Payment Method
(the "Payment Method Provider"). If Match.com does not
receive payment from your Payment Method Provider, you
agree to pay all amounts due on your Billing Account upon
demand.

**(e) Change in Amount Authorized.** If the amount to be
charged to your Billing Account varies from the amount you
preauthorized (other than due to the imposition or change in
the amount of state sales taxes), you have the right to
receive, and Match.com shall provide, notice of the amount
to be charged and the date of the charge at least 10 days
before the scheduled date of the transaction. Any agreement
you have with your Payment Method Provider will govern your
use of your Payment Method. You agree that Match.com may
accumulate charges incurred and submit them as one or more
aggregate charges during or at the end of each billing cycle.

**(f) Auto-renewal.** Your Match.com subscription will be
automatically extended for successive renewal periods of the
same duration as the subscription term originally selected,
at the then-current non-promotional subscription rate. To
change or resign your subscription at any time, go to Account
Settings. If you resign, you may use your subscription until
the end of your then-current subscription term; your
subscription will not be renewed after your then-current term
expires. However, you won't be eligible for a prorated refund
of any portion of the subscription fee paid for the then-
current subscription period.

**(g) Reaffirmation of Authorization.** Your non-termination or
continued use of the Service reaffirms that Match.com is
authorized to charge your Payment Method. Match.com may
submit those charges for payment and you will be
responsible for such charges. This does not waive
Match.com's right to seek payment directly from you. Your
charges may be payable in advance, in arrears, per usage, or
as otherwise described when you initially subscribed to the
Service.

**(h) Free Trials and Other Promotions.** Any free trial or

other promotion that provides subscriber-level access to the Service must be used within the specified time of the trial. You must cancel your subscription before the end of the trial period in order to avoid being charged a subscription fee. If you cancel prior to the end of the trial period and are inadvertently charged for a subscription, please contact Customer Care to have the charges reversed.

13. **Modifications to Service.** Match.com reserves the right at any time to modify or discontinue, temporarily or permanently, the Service (or any part thereof) with or without notice. You agree that Match.com shall not be liable to you or to any third party for any modification, suspension or discontinuance of the Service.

14. **Blocking of IP Addresses.** In order to protect the integrity of the Service, Match.com reserves the right at any time in its sole discretion to block Members from certain IP addresses from accessing the Website.

15. **Copyright Policy.** You may not post, distribute, or reproduce in any way any copyrighted material, trademarks, or other proprietary information without obtaining the prior written consent of the owner of such proprietary rights. Without limiting the foregoing, if you believe that your work has been copied and posted on the Service in a way that constitutes copyright infringement, please provide our Copyright Agent with the following information: an electronic or physical signature of the person authorized to act on behalf of the owner of the copyright interest; a description of the copyrighted work that you claim has been infringed; a description of where the material that you claim is infringing is located on the Website; your address, telephone number, and email address; a written statement by you that you have a good faith belief that the disputed use is not authorized by the copyright owner, its agent, or the law; a statement by you, made under penalty of perjury, that the above information in your notice is accurate and that you are the copyright owner or authorized to act on the copyright owner's behalf. Match.com's Copyright Agent for notice of claims of copyright infringement can be reached as follows: Match.com Legal, PO Box 25458, Dallas, TX 75225.

16. **Member Disputes.** You are solely responsible for your interactions with other Match.com Members. Match.com reserves the right, but has no obligation, to monitor disputes between you and other Members.

17. **Privacy.** Use of the Website and/or the Service is also governed by our Privacy Policy.

18. **Disclaimers.** Match.com is not responsible for any incorrect or inaccurate Content posted on the Website or in connection with the Service, whether caused by users of the Website, Members or by any of the equipment or programming associated with or utilized in the Service. **Match.com is not responsible for the conduct, whether online or offline, of any user of the Website or Member of the Service.** Match.com assumes no responsibility for any error, omission, interruption, deletion, defect, delay in operation or transmission, communications line failure, theft or destruction or unauthorized access to, or alteration of, user or Member communications. Match.com is not responsible for any problems or technical malfunction of any telephone network or lines, computer online systems, servers or providers, computer equipment, software, failure of email or players on account of technical problems or traffic congestion on the Internet or at any Website or combination thereof, including injury or damage to users and/or Members or to any other person's computer related to or resulting from participating or downloading materials in connection with the Web and/or in connection with the Service. Under no circumstances will Match.com or any of its affiliates, advertisers, promoters or distribution partners be responsible for any loss or damage, including personal injury or death, resulting from anyone's use of the Website or the Service, any Content posted on the Website or transmitted to Members, or any interactions between users of the Website, whether online or offline. The Website and the Service are provided "AS-IS" and Match.com expressly disclaims any warranty of fitness for a particular purpose or non-infringement. Match.com cannot guarantee and does not promise any specific results from use of the Website and/or the Service.

In addition to the preceding paragraph and other provisions of this Agreement, any advice that may be posted on the Website is for informational and entertainment purposes only and is not intended to replace or substitute for any professional financial, medical, legal, or other advice. Match.com makes no representations or warranties and expressly disclaims any and all liability concerning any treatment, action by, or effect on any person following the information offered or provided within or through the Website. If you have specific concerns or a situation arises in which you require professional or medical advice, you should consult with an appropriately trained and qualified specialist.

19. **Links.** The Service may provide, or third parties may provide, links to other World Wide Web sites or resources. Because Match.com has no control over such sites and resources, you acknowledge and agree that Match.com is not responsible for the availability of such external sites or resources, and does not endorse and is not responsible or liable for any Content, advertising, products or other materials on or available from such sites or resources. You further acknowledge and agree that Match.com shall not be responsible or liable, directly or indirectly, for any damage or loss caused or alleged to be caused by or in connection with the use of, or reliance upon, any such Content, goods or services available on or through any such site or resource.

20. **Linked Accounts.** Match.com permits you to associate a Match.com username and password with your Window's Live ID. When you establish a linked account, you can sign into Window's Live or AOL ScreenName and automatically sign into Match.com at the same time. Match.com is not responsible for the operation or functionality of Window's Live or AOL ScreenName. Microsoft is a registered trademark of Microsoft Corporation and AOL is a registered trademark of America Online, Inc.

Case 3:10-cv-02651-L Document 23 Filed 06/03/11 Page 32 of 39 PageID 121

21. **Limitation on Liability.** Except in jurisdictions where such provisions are restricted, in no event will Match.com be liable to you or any third person for any indirect, consequential, exemplary, incidental, special or punitive damages, including also lost profits arising from your use of the Web site or the Service, even if Match.com has been advised of the possibility of such damages. Notwithstanding anything to the contrary contained herein, Match.com's liability to you for any cause whatsoever, and regardless of the form of the action, will at all times be limited to the amount paid, if any, by you to Match.com for the Service during the term of membership.

22. **U.S. Export Controls.** Software from this Website (the "Software") is further subject to United States export controls. No Software may be downloaded from the Website or otherwise exported or re-exported (i) into (or to a national or resident of) Cuba, Iraq, Libya, North Korea, Iran, Syria, or any other Country to which the U.S. has embargoed goods; or (ii) to anyone on the U.S. Treasury Department's list of Specially Designated Nationals or the U.S. Commerce Department's Table of Deny Orders. By downloading or using the Software, you represent and warrant that you are not located in, under the control of, or a national or resident of any such country or on any such list.

23. **Jurisdiction and Choice of Law.** If there is any dispute arising out of the Website and/or the Service, by using the Website, you expressly agree that any such dispute shall be governed by the laws of the State of Texas, without regard to its conflict of law provisions, and you expressly agree and consent to the exclusive jurisdiction and venue of the state and federal courts of the State of Texas, in Dallas County, for the resolution of any such dispute.

24. **Indemnity by You.** You agree to indemnify and hold Match.com, its subsidiaries, affiliates, officers, agents, and other partners and employees, harmless from any loss, liability, claim, or demand, including reasonable attorney's fees, made by any third party due to or arising out of your use of the Service in violation of this Agreement and/or arising from a breach of this Agreement and/or any breach of your representations and warranties set forth above.

25. **No Third Party Beneficiaries.** You agree that, except as otherwise expressly provided in this Agreement, there shall be no third party beneficiaries to this Agreement.

**Other.** This Agreement contains the entire agreement between you and Match.com regarding the use of the Website and/or the Service. If any provision of this Agreement is held invalid, the remainder of this Agreement shall continue in full force and effect.

Please contact us with any questions regarding this agreement. Match.com is a trademark of Match.com, L.L.C.

I HAVE READ THIS AGREEMENT AND AGREE TO ALL OF THE PROVISIONS CONTAINED ABOVE.

Click here to complete registration

| Match.com Guarantee | About Match.com | Help | Dating Articles & Advice | Advertise on Match.com |
|---|---|---|---|---|
| Mobile | Media Room | Profile Assistance | How Online Dating Works | Become an Affiliate |
| Gift Subscriptions | Careers | Contact Us | Online Dating Safety Tips | Promotions & Sponsorships |
| ProfilePro | Terms of Use | Site Map | Success Stories | Business Development |
| | Match International | Your Privacy | Relationship Tips | |

© Copyright 2010 Match.com, L.L.C. wec1-075fec1-005s-

partner sites: Domania | Expedia | GetSmart | Hotels | Hotwire | Live Nation | Ticketmaster

# EXHIBIT
# B

# HARWOOD FEFFER LLP

488 MADISON AVENUE
NEW YORK, NEW YORK 10022

---

TELEPHONE: (212) 935-7400
TELECOPIER: (212) 753-3630

January 25, 2011

*Via Electronic Mail and*
*Certified Mail Return Receipt Requested*

Match.com, LLC
8300 Douglas Ave.,Ste. 800
Dallas, TX 75225

Attn: Office of the General Counsel

> Re:    *Notice of Violation of the Deceptive Trade Practices- Consumer*
> *Protection Act, Texas Business and Commerce Code, Section 17.50 et seq.*

To whom it may concern:

We represent Mary Anne Burgan, Janice Bond, Rile Marberry, and Richard Dicosola ("Claimants"), individually, and as representatives of persons who are, or within the last two years have been, paying members or subscribers of Match.com, LLC's ("Match.com" or the "Company") online dating service (the "Class"). The Claimants, all residents of the State of Texas, each agreed to Match.com's Terms of Use Agreement and paid subscription fees to use Match.com's service online dating service website.

We hereby notice service on behalf of the Claimants and the Class of the claim that Match.com's online dating service and its Terms of Use Agreement violate Section 17.50 (a)(3) of the Deceptive Trade Practices-Consumer Protection Act ("DTPA"). Specifically, we believe that the Company has violated Section 17.50 by engaging in and/or failing to disclose the following:

(a)    Representing itself as a legitimate service for single adults to meet each other online and accepting subscriptions fees from members and then failing to provide the service represented and offered;

(b)    Negligently and/or fraudulently representing that it had millions of active subscribers when, in fact, well over half of the profiles of the purportedly active subscribers belong to inactive accounts (*i.e.*, accounts that have been canceled or expired) that cannot be contacted, and/or are fake and fraudulent profiles posted by scammers and others;

Match.com, LLC
January 25, 2011
Page 2

(c)   Permitting, condoning or acquiescing in the posting of fake or fraudulent profiles by international internet scammers or others; thereby creating the false impression that millions of persons were active members or worse, exposing Claimants and others to frauds and other schemes;

(d)   Failing to accurately disclose its active and reachable subscriber base;

(e)   Falsely labeling inactive profiles as "active";

(f)   Failing to police its site from the proliferation of false and fraudulent profiles;

(g)   Failing to take reasonable steps to remove and block scammers, even after certain profiles have been reported;

(h)   Failing to disclose to subscribers that Match.com's online dating service contains mainly inactive profiles and/or fake profiles from internet scammers;

(i)   Failing to provide adequate information and tools on how to recognize and report scamming activity;

(j)   Failing to monitor and block IP addresses from certain countries from where scamming activity flourishes (*i.e.*, Nigeria, Ghana, Russia, Eastern Europe, Malaysia, and other locations);

(k)   Intentionally leaving profiles of inactive members viewable and searchable on its websites far beyond their date of inactivity or cancellation;

(l)   Taking virtually no steps to remove inactive users from view until a complaint is received by the former user of that account;

(m)   Falsely labeling profiles as "active within [#] days" or "active within [#] hours" when the accounts belong to cancelled and/or inactive accounts that could not be contacted;

(n)   Sending emails of suggested "matches" to its members and inactive members, even though these "matches" belong to inactive members who cannot be contacted;

(o)   Sending former and inactive members "winks" falsely informing them that a potential match is trying to contact them in order to bait individuals to renew

HARWOOD FEFFER LLP

Match.com, LLC
January 25, 2011
Page 3

their subscriptions (only to find out after they do so that the supposed seeker does not exist or cannot be contacted);

(p)    Failing to effectively vet new profiles to determine whether they are fake or fraudulent despite easily discernable "red flags" (including repeated use of imagery and language, and use of notorious IP address origins);

(q)    Approving and posting different profiles with the same exact photographs and groups of photographs in different cities and towns throughout the United States;

(r)    Approving and posting different profiles with the same exact text in different cities and towns throughout the United States;

(s)    Approving and posting profiles with individuals under the age of 18 in violation of the Match.com Terms of Use Agreement;

(t)    Approving and posting profiles that have email addresses and full names in violation of the Match.com Terms of Use Agreement;

(u)    Approving and posting profiles with photographs that depict individuals of incorrect gender;

(v)    Approving and posting fraudulent profiles with famous and notorious actors and models;

(w)    Falsely representing that Match.com customer care approves each profile individually when in fact profiles are automatically approved;

(x)    Falsely representing that there is gender parity on Match.com when in fact the majority of active and legitimate subscribers are male;

(y)    Failing to report or investigate scammers that repeatedly post fraudulent profiles on Match.com;

(z)    Misleading use of the notice to subscribers that, "We're sorry the profile you were looking for could not be found. Please try another profile," when such profiles have been removed for violating the Match.com Terms of Use Agreement;

(aa)    Failing to effectively police its site to monitor and remove fake and fraudulent member profiles that remain viewable by unwitting members;

HARWOOD FEFFER LLP

Match.com, LLC
January 25, 2011
Page 4

   (bb)  Engaging in fraudulent or misleading business practices for the purpose of inducing individuals to renew their subscriptions, *i.e.,* sending to paid members whose subscription are about to expire an electronic communication, or "wink," that falsely advises the member that persons who are active Match members are trying to contact them;

   (cc)  Continuously sending emails notifications to former members falsely advising them of potential "matches," in some cases more than a year after the person has deactivated their account, that are in fact profiles of inactive or nonexistent members whose profiles disappear once the individual reactivates their account;

   (dd)  Falsely representing on the Match.com website that 20,000 people join the online dating service on a daily basis, when Match knew or should have known that the such number is vastly inflated, that the vast majority of its members are fake profiles; and

   (ee)  Falsely representing on the Match website that 7 out of 10 of Match members are looking for serious long-term relationships when Match knew or should have known that the vast majority of its members are inactive, fake or fraudulent profiles.

As a consequence of the Company's acts and/or omissions, Claimants and the Class are entitled to recover from you, *inter alia,* economic damages and/or recover the money they paid and/or injunctive relief enjoining these acts and requiring disclosure of Match's actual active and legitimate subscriber base. Moreover, it is Claimants' belief that the Company acted knowingly and/or intentionally, as those terms are used in Section 17.50(b)(1) of the DTPA. As a consequence of the Company's knowing and/or intentional acts or omissions with regard to the Match.com online dating service and the Terms of Service Agreement entered into by the Claimants and members of the Class for such services, Claimants and the Class are entitled to an award of treble damages. Therefore, the Claimants and the Class are entitled to recover damages in the amount equal to triple of all subscription fees paid in the last two years.

In addition, Claimants are entitled to recover their reasonable and necessary attorneys' fees and costs in prosecuting claims against the Company. To date, Claimants have incurred substantial attorneys' fees and costs in investigating and preparing their claims against Match.com but nonetheless would accept an amount of $450,000.00 in the interests of early resolution. In the event that these claims are not resolved without the necessity of filing and prosecuting a lawsuit pursuant to the DTPA against Match.com, Claimants will incur

HARWOOD FEFFER LLP

Match.com, LLC
January 25, 2011
Page 5

substantial additional attorneys' fees and costs through the ultimate disposition of any such
lawsuit.

This demand letter is sent to you for the purpose of notifying you that Claimants have
claims against you, in a good faith attempt to resolve these claims, and to inform you that
Claimants intend to pursue their claims under the DTPA if this matter is not resolved within
sixty (60) days from your receipt of this demand.

Yours very truly,

Jeffrey M. Norton

cc:     State of Texas Attorney General,
            Consumer Protection Division (*via* Certified Mail Return Receipt Requested)
        Randolph M. McLaughlin, Esq. (*via* electronic mail)
        David B. Lever, Esq. (*via* electronic mail)
        Howard B. Stolzenberg, Esq. (*via* electronic mail)
        Evan Spencer, Esq. (*via* electronic mail)
        Roger F. Claxton, Esq. (*via* electronic mail)

**CERTIFICATE OF SERVICE**

I hereby certify that on this 3rd day of June, 2011, I electronically filed the foregoing document with the clerk of court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court.  The electronic case filing system sent a "Notice of Electronic Filing" to the following attorneys of record who have consented in writing to accept this notice as service of this document by electronic means:

James Edward Maloney
Shira R. Yoshor
Baker Botts, LLP
One Shell Plaza
910 Louisiana Street
Houston, Texas 77002

Jeffrey M. Norton
Randolph M. McLaughlin
Harwood Feffer, LLP
488 Madison Avenue
New York, New York 10022

David B. Lever
Howard B. Stolzenberg
Evan Spencer
Lever & Stolzenberg, LLP
303 Old Tarrytown Road
White Plains, New York 10603

_____*s/ Roger F. Claxton*_____
ROGER F. CLAXTON